Good morning, Your Honor. May it please the Court and the other honorable members of this Court. I will reserve a few minutes of my time for rebuttal, though it is my goal not to use all of my time under any circumstances. That's great. I want to present this as though I were working for the Court and as a labor lawyer who sees the unique penumbra of circumstances that occur in this area of law, ranging from the utterly mundane and human to the hybrid legal and structural ones. The mundane human one is the client in this case, the appellant, Pioneer Roofing, is signatory with the Sheet Metal Union. And the case arose because on work at the San Francisco Opera House, the structural sheet metal workers who work on that ornate stuff on top could not function without motion sickness and dealing with the height of the building. And as a result, the client then subcontracted the work to another entity that is signatory with the Roofing Union whose members had overcome those human issues. The second characteristic of the case is that when the matter was brought to arbitration, the only contractor entity named was the sheet metal signatory. I have done many, many arbitrations and it's quite common for the subcontractor or other company to be named to the grievance and then asked to compel their participant. Did your client participate in the arbitration? Yes, Your Honor, and that's right to the point to where I am now, which is to say the roofing signatory was not named and did not participate in the arbitration. It would have been common in all of the cases I've ever seen that the other company, the Roofer Union Company, would have been named and then would have either objected to its presence in the grievance or sought a court order or something not showing up. But your client had a full opportunity to defend itself and to raise all the issues that it needed to raise on its behalf, didn't it? It wasn't hampered in doing that. No, it raised all the issues that it was able to as to its status as a sheet metal signatory. That's correct, Your Honor. But because the roofing union was not named, the issue of waiver is inept to the discussion. Had they shown up, they would have been named. Can I clarify your position in that regard? Was there anything that would have prevented your client from making an objection even though PCI was not named in the grievance? It's not in a position to object on behalf of a company that was not named. You're doing it now, though, aren't you? I'm grateful for the chance to discuss the issues, Your Honor. But here this leads to the second point. Because the roofing company was not named and not present for purposes of objection, the second thing that wasn't present at the grievance arbitration was the roofer's contract. So to the extent that the sheet metal board made a decision, it made a decision with respect to the sheet metal contract only. And so the arbitral decision is outside, seems to reach, to touch the roofer's contract and that being the essence of a jurisdictional question. But when the party isn't in front of the grievance panel, the other labor contract is in front of, isn't in front of the panel. Now, the other corollary point that is not in front of the panel, not subject to be waived, and actually not even yet litigated, is part of the number of decisional trees that come out of the roofer's contract. And so we're in a peculiar position that where there is a damages case or an unfair labor practice case, that had to be presented to the grievance panel, to the arbitrator. That's no longer the law. So in this case, we're in the peculiar position that if there were an award, this court would affirm at the end of the day, there's a damages award that could be addressed in a district court, in a federal district court damages action. That being said, bear in mind that my clients and opposing counsel's clients are going to remain married to one another. So we're not precisely part of your mission. I'm not asking you to be marriage counselors. But the final point that's relevant here is the ultimate award of the panel is one I've never seen before. And in fact, has a balloon payment that says it doesn't address, well, there's these but not using the nomenclature of conventional liquidated damages that says you may have to pay. I, I, I, you mentioned that the award was a balloon payment in the introduction to your brief. But unless I missed something, I didn't see any discussion, see you, any discussion about the amount of the payment elsewhere in the, in your argument. Your Honor, it's in the excerpts of record. I don't have them here in front of me and they're, it's in the arbitral award. No, but I just mean, you're talking about balloon payment now. You mentioned it in your brief, but you didn't brief us on that, what you were concerned about. Well, let me explain it as best I can now, if you permit me. First off, my use of the word in a mortgage. An argument, an argument that you want us to take account of? I'd like you to take an account, into account because it is anomalous to the grievance process. In other words, a grievance award normally. One of the problems here is the great level of deference we have to give to the grievance process. So I'm not sure how we can consider what, I'm not even sure we have in the record what's, what's a regular grievance versus what's an anomalous aspect of a grievance. Your Honor, I think that. There's a fine as opposed to, I mean, I'm not quite sure I understand what you're saying. What makes this case different is it treads in the areas where the normal continuum of deferral cases really hasn't gone yet. So that's why I tried to line out these lemmas that the roofing signatory company was not named. It wasn't structurally in a position to object or go to court over its status because no one tried it in the grievance. The roofer's contract wasn't present for the arbitral panel to make a decision on. A decision was made based on the contract it had in front of it. And then, and then, that's, Your Honor, where I get to the nature of the remedy, which is profoundly unusual, but you can't take testimony from me that it's really unusual. In Maine, frankly, Your Honor, that would get addressed in that damages case or an unfair labor practice if that ever happened, if this didn't all otherwise resolve. But this is the nature of this business. I think labor law opens the door to some of the most interesting, peculiar things, you know, in our practices. Let me ask you one last question from myself. Do you have any objection to the award of attorney fees apart from your challenge of the underlying order? No, and I was going to reserve that for my last comment. The attorney's fees hinge upon the enforcement of the arbitration award. Closing counsel and I have litigated for many years. They're fantastic lawyers. There's no active issue on that. The attorney's fee award derives entirely from whether or not the grievance award is sustained, and if there are issues, they're not in front of you in that way. They would only be present in terms of pressing to enforce it being part of the conflict between the labor unions and involving these companies, and that's the damages case. All right, counsel, do you want to reserve the rest of your time? Yes, Your Honor. Thank you. Good morning. May it please the Court. I think it's still morning. Eileen Goldsmith for Sheet Metal Workers, Local 104. There's nothing anomalous about the grievance, the local joint adjustment award, or the remedy. This is a run-of-the-mill case to confirm an arbitration award under Section 301. The LJB is the joint labor management arbitration panel that PRO agreed to in the collective bargaining agreement with Local 104, and the LJB had the task of deciding whether PRO violated that contract by assigning work within the scope of the collective bargaining agreement to workers who are not represented by Local 104. The LJB heard the evidence from both sides. It decided unanimously in favor of Local 104, and as Judge Wardlaw points out, the standard of review here is highly deferential. The Court can't second-guess the LJB's fact-finding or its contract language that provides that covered work under the contract, which specifically includes metal roofing, shall be done by workers who are employed pursuant to the contract. Hypothetically, what if they can't do the work? That's a fact issue that goes to the— They need to go back to renegotiate the CBA or go back to the board or— It's an issue of LJB fact-finding that's not before the Court at all. Pioneer continues to try and re-argue the facts. They did that below. They're doing that again here, and the LJB had the power to find the facts. Even if the Court might have come out a different way, there's a long line of cases going back to the Steelworkers Trilogy and right up to drywall dynamics from this Court a couple of years ago that emphasize that no matter what the Court thinks of the quality of the fact-finding, it needs to be deferred to. I wanted to respond to the issue about waiver. Mr. Freed argues that PRO could not have argued the jurisdictional claim that it argues now because the other company, Pioneer Contracting— Are they related companies? I don't know if that's in the findings or not. It's not in the findings. It is in the record before the Court here. Both of the companies are controlled by the same people—Herbert Lee, Feliciano Avila, Manuel Avila. Pioneer Roofing, the plaintiff here, is a partnership. Pioneer Roofing—Mr. Lee and one of the Avilas were both present at the Local Joint Adjustment Board hearing. Mr. Freed was also present at the Local Joint Adjustment Board hearing. Had anyone cared to raise the issue of there's another company and they're not here, everyone was present who could have raised that issue. It's undisputed that it was not raised, and it's undisputed that Pioneer had the ability at that Local Joint Adjustment Board hearing to raise any issue that it wanted to. And having appeared at the LJAB, argued the grievance on the merits, and not said anything about the panel's jurisdiction under George Day and the line of cases out of the circuit following George Day, Pioneer has waived any objection to the LJAB's exercise of jurisdiction. I wanted to respond to a couple of points Mr. Freed raised. First, whether this is at all unusual to see a grievance of this kind. And we've cited a number of Ninth Circuit cases that show that it isn't. Berry Construction concerns a very similar kind of dispute where the laborers filed a subcontracting grievance against their contractor when their contractor subcontracted some work to a company that was signatory with the pipefitters. There's no discussion of the pipefitters and their subcontractor having been involved in that proceeding at all. Van Waters and Rogers, again, there are two different unions, but the grievance doesn't involve the second union. Kinney Air Conditioning, there are a union company and a non-union company controlled by the same people. Only the union company is involved in that grievance. The point is that these grievances to enforce one union's contract language by way of damages as opposed to specific performance are perfectly legitimate, don't raise any legal problems, and I would say that Kinney and Van Waters are the best examples of that. Nothing about that kind of damages grievance interferes with the contractual relationship between the other company and the other union. The last thing I wanted to raise was the remedy. As the court points out, the remedy is sort of casually mentioned in Pioneer's opening brief and then not mentioned further, but there's very broad language in this collective bargaining agreement regarding the LJB's authority to determine the remedy. Under that language, they can issue a remedy that they consider, quote, necessary and proper. What you have here is, when you look at it, they're really doing Pioneer a big favor, actually. Local 104 went into this grievance asking for a million dollars. The LJB reduced that to $600,000 and then suspended the $600,000. They looked back at the record and saw that there was this very similar grievance and award from three years ago with a suspended fine, which was still within the time to bring it back to life. That suspended fine was only $64,000. Now, the first time around back in 2012, the LJB could have looked at the situation and said, we have to clarify to this contractor what their obligations are. We will do that by imposing a huge amount. We'll suspend it pending good behavior. Now they know that this behavior violates the contract. They probably won't do it again. Three years later, when they see that the company has done it again, they figure that maybe a stronger remedy is appropriate. And so at that point, they say, okay, we're going to bring back the suspended fine because it's the identical violation and we have the 2012 award in the record with its terms. And we see that a bigger deterrent is now necessary also. So we're going to impose a fine. It's not what the union asked for, not even close, but we're also going to suspend that. But the bigger deterrent is now appropriate. But all of this is entirely permitted by the language of the collective bargaining agreement, which is really all that matters. Unless the court has any further questions for me, we'll be happy to submit. All right. Thank you, counsel. Thank you, counsel, and thank you to the court. Let me try and tie this together. I'm modestly familiar with George Day and those other cases. I might have played a part in litigating them. And one of the key parts of George Day is understanding when a party inadvertently makes a general appearance. So that, for example, if you're named in a grievance and you show up, the net result of the decision was you've showed up and the court has jurisdiction over you. And it's very, very difficult to do a special appearance in front of a grievance panel. Now, in this case, the issue was not broached because the roofing signatory company was not named. So that sequence of events never could have occurred. The fact that the sheet metal company truthfully related the history of the contract and the subcontracting and truthfully told about the work process and truthfully told about the – and by the way, Grandpa was a sheet metal worker. So in any event, truthfully told about the height issues and the ability to perform the work, that doesn't resonate with any concept of waiver. That is more consistent with simply telling the truth. But what contract – if not only is – this is a jurisdictional case in some ways like the one you just heard. If a relevant party is not present and if the union surely running the grievance would have had some interest as a structural matter in having that party and forcing that party to speak for itself with separate counsel, if they had an interest in this contract so that someone could decide, do you have jurisdiction over this? They would have – so the party wasn't present. The contract wasn't present. And I will let counsel's description of what I am characterizing as a balloon payment stand for itself. We are not in staying after school and you are going to get fined. There is no provision in that contract to fine anybody. There is a provision in every grievance award to award lost work. And the other grievance wasn't present in this case. So here are three or four critically relevant missing ghosts from the analytical matrix. So this really is as if it was a jurisdictional case more than any kind of conventional arbitration case. And my closing thought then comes back to steel workers. Because if the steel worker, the fourth prong of those cases had remained the law, it would have been required to articulate the unfair labor practice and actually bring it to the National Labor Relations Board. That's been dropped from the whole concept of deferral. So this is actually, you know, it's an oddball case. It has some humorous elements. But it has the potential to be one of the most interesting in this whole dichotomy of decisions in quite a while. So thank you for listening. Thank you very much, Council. You're very welcome. Pioneer Roofing v. Sheet Metalworkers, Local Union 104 will be submitted. We'll take up Espinoza v. Sessions.
judges: Wardlaw, Nguyen, Oliver